453 A.2d 923

**COMMONWEALTH of Pennsylvania**

v.

**Leonard REEL, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 22, 1982.

Decided Dec. 17, 1982.

382

Darryl A. Irwin, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Gail Thackeray, Asst. Dist. Atty., for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On October 13, 1978 at approximately 12:00 a.m. one Wylie A. Howie was stabbed to death in a Philadelphia bar. Appellant was accused of this crime and was brought to trial before a jury in the Court of Common Pleas of Philadelphia, Pennsylvania. On May 24, 1979, he was convicted of first degree murder and sentenced to life imprisonment. This appeal was taken from that conviction and sentence.

The facts of the case are as follows. When police officer Isreal Raynor, in response to a radio call, arrived at Jake's Lounge, the scene of the crime, at approximately 12:30 a.m., he encountered two young women coming out of the door. The officer asked one of the women, Lisa Heard, what had happened, and she told him that a dark complexioned Negro male, of slender build with a medium bush haircut, approximately eighteen to twenty years of age and wearing a green

army jacket had stabbed the victim. She told him that although she did not see the stabbing itself, the victim and the suspect had been standing at the bar together talking, and she saw the suspect folding something that looked like a knife just as the victim backed away from the suspect saying that he had been stabbed. She added that although she did not know the suspect personally, she had been told that his name was Sonny. An unidentified woman who was with Ms. Heard added, "You know, Black Sonny."

Officer Raynor had been assigned to this particular neighborhood for fourteen years, knew Ms. Heard, the witness, was familiar with this bar, and had known the appellant for five years. He testified during the suppression hearing that Ms. Heard's physical description of the suspect suggested to him that the appellant was the person she was describing and that her statement of the suspect's name confirmed his view that appellant was the person described. Further, during the week prior to the stabbing, he had seen the appellant wearing a green army jacket. Approximately one month later, on November 6, 1978, Officer Raynor arrested appellant without a warrant after seeing him on a street corner. After appellant was arrested and transported to the homicide division, appellant was warned of his rights and gave a voluntary inculpatory statement to police which was introduced as evidence at trial. The first issue raised is whether appellant's statement to police should have been suppressed because his arrest was without probable cause.

Appellant's claim is that Officer Raynor would not have been able to connect appellant with the crime in the absence of Ms. Heard's statement that *she had been told* that the suspect's name was "Sonny," and her companion's comment, "You know, Black Sonny." The argument is that the witnesses' information is hearsay and may not be used to establish probable cause to arrest unless the information meets the two pronged tests of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) requiring (1) the officer must know some of the

underlying circumstances from which the informer concluded that the suspect participated in the crime and (2) the officer must have some reasonable basis for concluding that the informant is credible or his information is reliable.

Applying the *Aguilar-Spinelli* criteria to this case, the specific challenges to the arrest are (1) because the officer did not know Ms. Heard's last name, but knew her only as Lisa, and because the woman who volunteered that appellant's name was Black Sonny was anonymous, there is insufficient indicia of *Aguilar-Spinelli* credibility of witnesses and reliability of their information to establish probable cause. (2) Even if Ms. Heard and the second witness had been identified, the information that the suspect's name was Sonny or Black Sonny fails both of the *Aguilar-Spinelli* tests in that it was hearsay information coming from an unknown source, and thus was inherently unreliable, and could not be utilized to bolster the general description to establish probable cause.

■ The brief answer to these claims is that the *Aguilar-Spinelli* test is not applicable to this case because there was a substantial basis for crediting the information given by the informer. As this Court stated in *Commonwealth v. Stokes:*

> in order to arrest without a warrant, the officer must have a reasonable belief in the probability of criminal activity by the person to be arrested. However, that belief need not be grounded in the officer's direct, personal knowledge of the relevant facts and circumstances. It may, instead, rest solely on information supplied by another person where there is a "substantial basis" for crediting that information.

480 Pa. 38, 43–44, 389 A.2d 74, 76 (1978), citing *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). In the present case the substantial basis was that (1) the information was supplied by an eyewitness; (2) the physical description alone given by this eyewitness, which was detailed and conformed to the description of a person whom the officer knew to live in the area, was adequate to

establish probable cause, thus eliminating a need to determine whether the hearsay information (as to the actor's name) was sufficiently reliable.

The significance of the fact that the informant in the present case was a disinterested eyewitness is, as this Court stated in *Commonwealth v. Stokes,* "we have tended to credit information supplied by one who has some direct personal knowledge of the crime." 480 Pa. at 44, 398 A.2d at 77. There is a "substantial basis" for crediting such information. Further, such a position is self-evidently consistent with the first part of the *Aguilar-Spinelli* requirements that the magistrate or officer know the underlying circumstances from which the informer concluded that the suspect participated in the crime. If a person has witnessed a crime, the act of witnessing is the circumstance from which he concludes that the suspect participated in the crime.

But even if we were to treat appellant's claim as requiring an *Aguilar-Spinelli* analysis (because the information contained a hearsay element), it would fail. In addressing the first argument that the witnesses are not credible (because one is anonymous and the arresting officer did not know the last name of the other) and their information is therefore unreliable, it must be observed that Officer Raynor knew Ms. Heard prior to the stabbing incident, although he did not know her last name. She was, therefore, an identified eyewitness and was reliable as to what she saw. The fact that an unnamed eyewitness offered additional information as to the suspect's identity which tended to corroborate Ms. Heard's physical description does not make Ms. Heard's physical description unreliable, *See Commonwealth v. Sudler,* 496 Pa. 295, 436 A.2d 1376 (1981) (probable cause to issue search warrant was present where only one of two informants was named in the affidavit in support of request for a search warrant and there was no reason to believe that the other informant was not credible and reliable); nor, as is discussed below, does it make unreliable the physical description in combination with the name.

The second prong of appellant's attack is that the account of events and the physical description supplied by the named witness is insufficient to establish probable cause and that the remaining information as to the suspect's name, Sonny or Black Sonny, is hearsay and may not be grafted onto the competent information (eyewitness description of physical characteristics) to bolster it and thereby establish probable cause. Presumably the underlying argument is that the hearsay is or may be inaccurate.

■ First, this argument fails because the physical description of the suspect was in itself adequate to establish probable cause for arrest. But even where the physical description is inadequate, as we stated last year in the *Sudler* case:

In a case where two independent sources of information were presented which, "standing alone, arguably [did] not possess a sufficient guarantee of reliability to create the probable cause necessary to issue a search warrant," this Court held:

"When two *independent* informants both supply the same information about a particular crime to the police, each source tends inherently to bolster the reliability of the other. Although the information supplied by one questionable source may be insufficient, the probability is extremely small that a second independent source would supply identical information if it were not probably accurate."

*Commonwealth v. Mamon,* 449 Pa. 249, 259, 297 A.2d 471, 477 (1972).

496 Pa. at 305–06, 436 A.2d at 1381. In the present case, the information supplied by the different informants (Ms. Heard, the unknown person who told Ms. Heard suspect's name, and Ms. Heard's anonymous companion, who commented that the suspect's name was Black Sonny) was not "identical" in that Ms. Heard's information was a general description of the actor and the challenged information was a name. However, in *Mamon* the information was similarly non-identical: in that case two witnesses said that appellant

was seen entering the garage of the murder victim shortly before the murder; and a third witness, who entered the house and was herself the victim of an attempted murder, stated that appellant was her assailant. Thus, the information, while different, was "identical" in that it pointed to appellant as the murderer. That is also the situation in this case: both the description and the alleged name of the suspect coincide to point to the same person. As we concluded in *Mamon,* "acting together, each [source of information] complements the other sufficiently to produce the reliability necessary to create probable cause." 449 Pa. at 260, 297 A.2d at 477. It was not error, therefore, to admit the police statement, for there was adequate indicia of accuracy in the witness statements given police to establish probable cause for the arrest.

In cases of this type, it is well to remember that our inquiry as to reliability and trustworthiness concerns a kind of common sense approach to probabilities inherent in the situation. As the United States Supreme Court has stated, in dealing with the question of whether police knowledge of a suspect's reputation for criminal activity could be used to support a determination of probable cause to arrest:

> Such evidence would rarely be admissible at trial, but the Court [in *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)] took pains to emphasize the very different functions of criminal trials and preliminary determinations of probable cause. Trials are necessarily surrounded with evidentiary rules "developed to safeguard men from dubious and unjust convictions." *Id.* at 174, [69 S.Ct. at 1310], 93 L.Ed. at 1889. But before the trial we deal only with probabilities that "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar, supra, at 175 [69 S.Ct. at 1310], 93 L.Ed. at 1890.

*United States v. Harris,* 403 U.S. at 582, 91 S.Ct. at 2081, 29 L.Ed.2d at 733 (1971).

█ On the one hand, we must protect our citizens from groundless police intrusions; on the other, it is destructive of the entire concept of an ordered society to prohibit arrests and searches when police have been given probably reliable information from a probably trustworthy source. If there is a "substantial basis" for the belief that a particular person has committed a crime, see *United States v. Harris, supra,* as there is when an eyewitness gives a detailed physical description of the actor, there is probable cause for an arrest.*

Affirmed.

LARSEN, J., concurs in the result.

---

* Appellant also raises three further claims: (1) the prosecutor made improper remarks during closing argument and a new trial is required; (2) it was error to try appellant before a death qualified jury; (3) the evidence was insufficient to convict of first degree murder. After a careful examination of the record, we conclude that these further assertions of error are also without merit.