484 A.2d 1383

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Theodore JONES and Sandra Sirchie, Appellees.**

Supreme Court of Pennsylvania.

Argued April 13, 1984.

Decided Dec. 6, 1984.

Joseph J. Hylan, Asst. Dist. Atty., for appellant.

Richard J. Hodgson, Michael D. Marino, Norristown, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-
MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

The sole issue in this appeal is whether a narcotics
agent's affidavit in support of the issuance of a search
warrant established probable cause for the resulting search
of a private residence for heroin and other controlled sub-
stances. The Court of Common Pleas concluded that it did
not, and suppressed the evidence seized pursuant to the
warrant; a Superior Court panel affirmed without opinion,
313 Pa.Super. 602, 460 A.2d 850. For the reasons which
follow we vacate the orders of the courts below and remand
for further proceedings.

### I.

The search warrant in question, which authorized the
search of a single-family house at 17 Glenwood Avenue,
Lower Providence Township, Montgomery County, occupied
by appellees Theodore Jones and Sandra Sirchie, was issued
by a district justice on the basis of a lengthy affidavit
prepared by an agent of the State Drug Enforcement
Agency ("Agent"). The affidavit chronicles the Agent's
entire investigation of appellees, reporting the results of his
surveillance of appellees and their residence over a six-
month period, as well as information obtained from police
and motor vehicle records and from two confidential infor-
mants. The averments in the affidavit, the most pertinent
of which will be summarized below, are presented in chrono-
logical sequence.

### A.

The affidavit begins with a recital of information received
by the Agent "within the past several months" from a
confidential informant. According to the affidavit, this
informant had furnished the Agent with reliable informa-

tion over the past two years which resulted in two drug-related arrests and one conviction. The informant alleged that "[a]n individual known as TED JONES is distributing Heroin in the Norristown area" and "deals Heroin to numerous individuals in the area." Four such customers were identified as being Connie Powers, Kevin Kemper, Richard Zimmerman and Blain Harris. The informant also indicated that Jones and Sirchie were living together on Arch Street in Norristown, and that both were being treated for heroin addiction at a methadone clinic in Norristown.

The affidavit further relates the details of the Agent's investigation of the informant's "tip." On December 5, 1980, the Agent was informed by the Lower Providence police that Jones had moved to 17 Glenwood Avenue in that township, and that a number of complaints had been received from Jones' neighbors regarding suspicious activity at that address. Specifically, numerous individuals were said to be entering the house, staying a few minutes and then leaving.

The Agent conducted a spot surveillance of 17 Glenwood Avenue the following day. He observed two men arrive in a truck, followed soon thereafter by Jones. All three then entered the house and, after ten minutes, the two visitors left. The Agent followed them to a bar where he observed the driver "go on the nod" and exhibit "the tell tale signs of Heroin use."

On December 13, 1980, the Agent observed a man he identified as Ricky Lynch enter 17 Glenwood Avenue and leave three minutes later. Lynch was known to the Agent through police and confidential sources and personal contact as a heroin user. Four days later the Agent saw Sirchie leave 17 Glenwood Avenue and drive to a parking lot where she met briefly with a man in another car, looking around suspiciously during what the Agent interpreted as a drug sale. A subsequent check revealed that the other car was registered to Connie Campbell (a female), previously named by the informant as one of Jones' clients.

On December 20, 1980, the Agent observed Jones and Sirchie leave 17 Glenwood Avenue and drive to the Norristown Methadone Clinic. While Jones was seated in his car in the Clinic's parking lot, two men approached him and handed him money. Jones, after looking all around, handed something to one of them. Jones and Sirchie left shortly thereafter.

Later the same day Jones again was seen leaving 17 Glenwood Avenue and driving to a restaurant parking lot where he met with Charles Moles. Moles left his car, walked over to Jones' vehicle and handed him money. Jones "palmed" something and gave it to Moles. Jones then left the area. Within five minutes after Jones' departure, the Agent observed Moles roll up his sleeve and use a hypodermic needle.

The last surveillance worthy of mention was conducted on March 11, 1981, when an automobile registered to Kevin Kemper, whom the informant had named as one of Jones' customers, was seen parked in front of 17 Glenwood Avenue.

Having described the results of his surveillance, the affidavit next states that the Agent met with a second confidential informant on May 13, 1981, the day preceding the search. This latter informant had provided the Agent with reliable information over the past six years which had led to the arrest and conviction of two individuals in Montgomery County for selling heroin. This informant, like the first, told the Agent that Jones was selling heroin to numerous persons in the Norristown area. The informant named six of Jones' customers, including Blain Harris, also named by the first informant as a Jones' client; Kevin Kemper, whose car the Agent had seen parked in front of 17 Glenwood Avenue, also named by the first informant; Ricky Lynch, whom the Agent had observed entering and leaving Jones' house and whom the Agent knew to be a heroin user; and Charley Moles, whom the Agent had observed engage in a financial transaction with Jones and subsequently give himself an injection.

Additionally, the informant stated that he had been in Jones' company over the past several weeks, had used heroin supplied by Jones, which the informant described as "excellent," and had visually observed Jones in possession of heroin over that time period. The informant provided details as to Jones' operation stating that Jones' supplier was "a white/male from N.Y. known as Craig," that Jones "is selling heroin in the form of N.Y. quarters for between $125 and $145 per packet" and that Harris was dealing for Jones.

The second informant is also reported to have stated that Jones formerly resided in East Norriton Township. On May 14, 1981, the Agent contacted that township's police department regarding Jones' record, and learned that Jones was known to be involved in hard drugs and had been associated with Harris, Kemper and Richard Zimmerman [1] when Jones lived in the township eight years earlier. The Agent was also told that information received "over the years" indicated that Harris, Kemper and Zimmerman "are involved in hard drugs."

### B.

On the basis of the information described above, a district justice issued a search warrant for 17 Glenwood Avenue at 4:00 p.m. on May 14, 1981. The warrant was executed at 5:30 p.m. by the Agent in concert with members of the Montgomery County District Attorney's Narcotics Enforcement Team and the local police. A three-hour search yielded quantities of heroin, cocaine, marijuana and pills. Appellees were arrested on the premises and charged with violations of the Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 13, *as amended*, 35 P.S. § 780–113 (1977 & Supp.1984–85), and criminal conspiracy, 18 Pa.C.S. § 903.

Motions to suppress the fruits of the search filed by both appellees were granted by the Court of Common Pleas of

1. Richard Zimmerman had been identified to the Agent as a customer of Jones by the second informant.

Montgomery County on the ground that the affidavit in support of the warrant failed to establish probable cause. Following an unsuccessful appeal by the Commonwealth to the Superior Court from that determination, this Court granted allocatur.

## II.

The legal principles applicable to the instant case are well established. Before an issuing authority may issue a constitutionally valid search warrant he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. *Commonwealth v. Davis*, 466 Pa. 102, 351 A.2d 642 (1976); *Commonwealth v. Jackson*, 461 Pa. 632, 337 A.2d 582, *cert. denied*, 423 U.S. 999, 96 S.Ct. 432, 46 L.Ed.2d 376 (1975); *Commonwealth v. D'Angelo*, 437 Pa. 331, 263 A.2d 441 (1970). The requisite probable cause must exist at the time the warrant is issued and be based on facts closely related in time to the date of issuance. *Commonwealth v. Tolbert*, 492 Pa. 576, 424 A.2d 1342 (1981); *Commonwealth v. Jackson, supra; Commonwealth v. Eazer*, 455 Pa. 320, 312 A.2d 398 (1973); *Commonwealth v. McCants*, 450 Pa. 245, 299 A.2d 283 (1973); *Commonwealth v. Simmons*, 450 Pa. 624, 301 A.2d 819 (1973). If the district justice is presented with evidence of criminal activity at some prior time, it must also be established that the criminal activity continued up to the time of the request for the warrant in order to support a finding of probable cause. *Commonwealth v. Tolbert, supra; Commonwealth v. Jackson, supra; Commonwealth v. Shaw*, 444 Pa. 110, 281 A.2d 897 (1971).

The information offered to demonstrate probable cause must be viewed in a common sense, nontechnical, ungrudging and positive manner. *Commonwealth v. Edwards*, 493 Pa. 281, 426 A.2d 550 (1981); *Commonwealth v. Conner*, 452 Pa. 333, 305 A.2d 341 (1973); *Commonwealth v. Simmons, supra*. It must also be remembered that probable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, *Commonwealth*

*v. Tolbert, supra; Commonwealth v. Mamon,* 449 Pa. 249, 297 A.2d 471 (1972); *Commonwealth v. Marino,* 435 Pa. 245, 255 A.2d 911 (1969), *cert. denied,* 397 U.S. 1077, 90 S.Ct. 1526, 25 L.Ed.2d 811 (1970), and that deference is to be accorded a magistrate's finding of probable cause, *Commonwealth v. Tolbert, supra; Commonwealth v. McCants, supra.*

In the instant case the courts below summarily rejected each of the first 14 paragraphs of the affidavit as failing to establish probable cause, focusing only on paragraph 15.[2] Both courts concluded that, since paragraph 15 failed to satisfy the "basis of knowledge" prong of the *Aguilar-Spinelli* test, *see Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), *both cases overruled, Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), it, too, was insufficient to support a finding of probable cause. We disagree with both this analysis and its result.

 First, it must be recognized that this is not a case in which the police offered only the statement of a confidential informant to demonstrate probable cause. *Cf. Commonwealth v. Greco,* 465 Pa. 400, 350 A.2d 826 (1976); *Commonwealth v. Conner, supra.* Rather, the statements of the two informants herein are of relatively minor importance within the context of the entire affidavit. Both primarily serve to bolster the Agent's conclusions that the circumstances and events observed during actual surveillance did, in fact, represent drug sales taking place inside or emanating from 17 Glenwood Avenue. Conversely, the results of the surveillance tend to corroborate both informants' statements. It is unnecessary to consider whether each statement, standing alone, would support a finding of

---

**2.** Paragraph 15 of the affidavit states:
> Within the last 24 hours [the] Agent ... has received information from CI # 2 [the second informant] that indicates that TED JONES in conspiracy with BLAIN HARRIS and SANDRA SERGIE [sic] are distributing heroin from # 17 Glenwood Avenue, Lower Providence Twp.[,] Montgomery County.

probable cause. As we stated in *Commonwealth v. Monte*, 459 Pa. 495, 329 A.2d 836 (1974):

"[I]t is soundly established that an informer's report which itself fails to establish probable cause may be sufficiently corroborated by independent observation of a suspect's conduct, if the latter tends to confirm the information in the report or otherwise to support a conclusion that the suspect is engaged in committing a crime." *United States v. Acarino*, 408 F.2d 512, 515 (2d Cir.1969), *cert. denied*, 395 U.S. 961, 89 S.Ct. 2101, 23 L.Ed.2d 746 (1969).

*Id.*, 459 Pa. at 507, 329 A.2d at 842.

*See also Commonwealth v. Norwood*, 456 Pa. 330, 319 A.2d 908 (1974).

 Moreover, the statements of different informants may corroborate each other. *See U.S. v. Simmons*, 444 F.Supp. 500 (E.D.Pa.1978), *aff'd* 591 F.2d 206 (3d Cir.1979); *Commonwealth v. Reel*, 499 Pa. 381, 453 A.2d 923 (1982); *Commonwealth v. Sudler*, 496 Pa. 295, 436 A.2d 1376 (1981); *Commonwealth v. Edwards, supra; Commonwealth v. Mamon, supra; Commonwealth v. Hartley*, 264 Pa.Super. 219, 399 A.2d 745 (1979). Here, both informants gave similar descriptions of Jones, stated that he lived with Sirchie and that Jones and Sirchie were undergoing methadone treatment in Norristown, and named Harris and Kemper as customers of Jones. Both state as their ultimate conclusion that Jones is distributing heroin in the Norristown area. Thus, while the information provided by the first informant does nothing to establish that heroin would be found at 17 Glenwood Avenue, it does sufficiently corroborate the second informant to make it more probable than not that the latter informant's statement that heroin was actually being distributed from that address was also true. *See U.S. v. Simmons, supra; Commonwealth v. Reel, supra; Commonwealth v. Sudler, supra; Commonwealth v. Edwards, supra; Commonwealth v. Mamon, supra; Commonwealth v. Hartley, supra*.

 The information supplied by the second informant also renders more certain the existence of a continuing course of criminal activity up to the time the warrant issued. The results of the Agent's earlier surveillance are relevant to a determination of present probable cause. *See Commonwealth v. Tolbert, supra; Commonwealth v. Jackson, supra; Commonwealth v. Shaw, supra.* Thus the affidavit, taken as a whole, clearly supports a finding of probable cause.

In view of our conclusion, we need not evaluate the reliability of the informants under the new federal standard announced in *Illinois v. Gates, supra.* Neither are we presented with an appropriate opportunity to decide whether to adopt that standard as a matter of state constitutional law or to retain the *Aguilar-Spinelli* test in Pennsylvania.

Accordingly, the order of the Superior Court is reversed, the suppression order is vacated and the matter is remanded for further proceedings.

HUTCHINSON, J., joins in this opinion and files a concurring opinion.

ZAPPALA, J., files a dissenting opinion.

HUTCHINSON, Justice, concurring.

I join the majority's view that the affidavit of probable cause before us in this case sets forth sufficient facts to meet the former two-pronged test of *Aguilar-Spinelli.* *See Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1969). I would have found it unnecessary to discuss that standard since I believe the totality of the circumstances test set forth in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), is all that either our state or federal constitutions require. This affidavit plainly meets the *Gates* test. Therefore, I believe that discussion of the earlier, more stringent test, is unnecessary.

ZAPPALA, Justice, dissenting.

The result reached by the majority's total departure from the requirements of probable cause necessary to obtain a valid search warrant is but another example of the perversion of constitutionally mandated protections which occurs from capriciously invoking the quasi-magical rehabilitative powers of the "totality of the circumstances test" to validate an illegal search warrant. This result-oriented approach to our rules does not bode well for their stability. Our case law makes it abundantly clear that stale evidence may not be used to establish the probable cause necessary for the issuance of a search warrant, but rather the conclusion that probable cause exists must be based on facts which are closely related in time to the date the warrant is issued. "If the issuing officer is presented with evidence of criminal activity at some prior time, this will not support a finding of probable cause as of the date the warrant issues, unless it is also shown that the criminal activity *continued up to or about that time"*. *Commonwealth v. Tolbert*, 492 Pa. 576, 424 A.2d 1342 (1981), and cases cited therein (emphasis in original). The reason for the prohibition against stale evidence is that "... even if the incriminating information is dated, as time passes and it becomes *possible* for the facts and circumstances to change, a redetermination of probable cause is constitutionally required." *Tolbert*, 492 Pa. 580, 424 A.2d at 1344 (emphasis in original). The facts of the instant case are similar to those of *Tolbert* where the stale evidence, consisting of the information of an informant who at some time in the past observed a drug transaction involving that appellant, was coupled with the fifty-minute surveillance of the appellant's house by the police the day before executing the search warrant. This surveillance, standing alone, was not sufficient to provide the probable cause necessary for the issuance of a search warrant, nor was it sufficient to revive the past observations of the informant, and the evidence was suppressed.

Fully aware of the import of the *Tolbert* rule, I cannot envision the bald assertion of a confidential informant that

the Appellants here were distributing heroin from their residence, which, if standing alone would be insufficient for a finding of probable cause, as being sufficient to revive the stale evidence obtained by Agent Bordeleau. My reading of the affidavit of probable cause indicates that the latest evidence obtained by Agent Bordeleau from which criminal activity can be inferred was obtained on December 20, 1980, fully five months prior to the application for a search warrant. When applying the *Tolbert* standard in a determination of probable cause where some of the evidence is stale, and given the facts at hand, I find the observations of Agent Bordeleau not to be sufficiently proximate in time to the date of the warrant to establish probable cause on their own. Nor do I find the information supplied by the confidential informant as providing sufficient evidence that the criminal activity observed by Agent Bordeleau continued up to the time of the issuance of the search warrant—a condition necessary to validate the stale evidence. I would therefore affirm the finding of the Superior Court based on the well-reasoned opinion in *Tolbert*.