J-S06045-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA : | IN THE SUPERIOR COURT OF |
| : | PENNSYLVANIA |
| : | |
| v. : | |
| : | |
| : | |
| : | |
| RAYMOND W. SCHOEN, : | |
| : | |
| Appellant :: | No. 1304 EDA 2017 |

Appeal from the Judgment of Sentence March 28, 2017
in the Court of Common Pleas of Chester County,
Criminal Division at No(s):  CP-15-00000739-2016

BEFORE:  BOWES, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MAY 01, 2018**

Raymond W. Schoen ("Schoen") appeals from the judgment of sentence imposed following his convictions of two counts each of theft by unlawful taking and theft by receiving stolen property.[1]  We affirm in part, and vacate and remand in part.

On the night of December 15, 2015, John Fraser ("Fraser") noticed that his shotgun and rifle were missing.  Fraser kept the single bolt action for the rifle in a locked gun case, hidden separately from the rifle.  The key to the gun case was also hidden in the home.  Fraser contacted the police, who came to Fraser's home.  At that time, Fraser told the officers of his suspicion that Schoen, Fraser's pet sitter, had stolen the weapons, as Schoen was the only other person with a key to Fraser's house.

---

[1] **See** 18 Pa.C.S.A. § 3921, 3925.

Fraser subsequently contacted the gun shop from which he had purchased the firearms. Upon hearing Fraser's description of the firearms, the gun shop manager, Lawrence Hudson ("Hudson"), stated that those same weapons were offered to him for purchase. Hudson, a Delaware constable, told Fraser that he would recognize the seller if he was shown a photograph of that person. Thereafter, Birmingham Police Sergeant Kevin Urbany ("Sergeant Urbany") displayed a driver's-license photograph of Schoen to Hudson. Hudson identified Schoen as the person who had offered to sell the stolen weapons. Several weeks later, Hudson identified Schoen from a photo array.

Police officers subsequently executed a search warrant on Schoen's apartment. Although Schoen initially denied having any knowledge of the firearms, police located the stolen firearms inside of Schoen's apartment. Schoen was arrested and informed of his rights pursuant to **Miranda v. Arizona**, 384 U.S. 436 (1966). Schoen agreed to speak with the police, at which time Schoen admitted that he had stolen the firearms because he was having financial difficulties. However, Schoen denied trying to sell the firearms, and stated that there was "not much to say—you found the guns at my house." Trial Court Order, 12/19/16, at 2 n.1.

Schoen filed a pre-trial Motion to suppress Hudson's identification of Schoen as the person who had attempted to sell the firearms; to preclude Hudson from making an in-court identification of Schoen; to suppress

- 2 -

evidence seized during the execution of the search warrant on Schoen's apartment; and to suppress Schoen's subsequent statements to the police. After a hearing, the suppression court denied Schoen's Motion.

After a trial on stipulated facts, the trial court found Schoen guilty of the above-described charges. Thereafter, the trial court sentenced Schoen to two to twenty-three months in jail, followed by two years of probation. Schoen timely filed a Notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Schoen presents the following claims for our review:

1. Did the suppression court err in failing to grant [Schoen's] [M]otion[] to suppress a witness's pre-trial identification based[,] on a single driver's license photo[,] because that procedure was unduly suggestive[,] and the witness lacked an independent basis for the identifications?

2. Did the suppression court err by finding that probable cause for the issuance of the search warrant for [Schoen's] home existed, even though the information therein was clearly stale?

3. Did the suppression court err in failing to find that the search warrant for [Schoen's] home was defective because it lacked [a] sufficient factual basis to establish probable cause?

4. Should [Schoen's] statements to law enforcement have been suppressed as the fruit of the poisonous tree?

5. Was the [trial] court's [O]rder requiring [Schoen] to pay restitution to the insurance company and the victim an illegal sentence because the firearms were returned to the victim?

Brief for Appellant at 4-5.

Schoen first claims that the suppression court improperly denied his Motion to suppress Hudson's pre-trial identification. *Id.* at 9. Schoen argues

that Hudson's identifications were tainted by the one-photograph procedure initially employed by police officers. *Id.* Schoen acknowledges that the suppression court struck Hudson's first identification of Schoen from a single photo. *Id.* at 11. However, Schoen disagrees with the suppression court's finding that Hudson had an independent basis for his identification of Schoen from the photo array. *Id.* According to Schoen, "[t]he suppression court relied heavily [on] [] Hudson's testimony that he remembered [Schoen's] face[;] however[,] it ignored the lack of corroborating time orientation with other witnesses and [] Hudson's inability to recall anything other than generalized details about [the] events." *Id.*; *see also id.* at 13 (arguing that the suppression court ignored Hudson's "lack of time orientation with other witnesses.").

Schoen asserts that Hudson's first identification of Schoen was tainted by the single-photo procedure used by the police, and that the officer improperly deleted any reference to the single-photo identification procedure from their Affidavit of Probable Cause for the search warrant. *Id.* at 12. Schoen contends that all subsequent identifications of Schoen by Hudson were tainted by the initial single-photo identification procedure. *Id.* Schoen additionally directs our attention to Hudson's inability to recall certain aspects of the timeline offered by police. *Id.* at 14.

Schoen further challenges the suppression court's finding that Hudson had an independent basis for his in-court identification. *Id.* Schoen relies on his challenge to Hudson's identification as the basis for his argument that the search warrant for his apartment, and the evidence seized as a result of the search, should have been suppressed. *See id.* at 10.

In appeals from suppression orders, our scope of review is limited to the evidence presented at the suppression hearing. *In the Interest of L.J.*, 79 A.3d 1073, 1088-89 (Pa. 2013). In reviewing an order denying a suppression motion,

> [a]n appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, it is also well settled that an appellate court is not bound by the suppression court's conclusions of law.

*Commonwealth v. Caple*, 121 A.3d 511, 516-17 (Pa. Super. 2015) (citations omitted).

> With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings. Only factual findings which are supported by the record are binding upon this Court.

*Id.* (citation omitted). "In addition, we are aware that questions of the admission and exclusion of evidence are within the sound discretion of the

trial court and will not be reversed on appeal absent an abuse of discretion."
*Id.*

"Whether a pretrial identification should be suppressed as unreliable is determined from the totality of the circumstances." ***Commonwealth v. Cousar***, 154 A.3d 287, 306 (Pa. 2017). "A pretrial identification will not be suppressed unless the facts demonstrate that the identification procedure was so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification." ***Commonwealth v. Johnson***, 139 A.3d 1257, 1278-79 (Pa. 2016) (citation omitted).

If a pre-trial identification is tainted, "the subsequent in-court identification will be admissible if there exists an independent basis for the identification[.]" *Id.*

> [T]he following factors should be considered in evaluating the likelihood of misidentification:  (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

***Commonwealth v. Patterson***, 91 A.3d 55, 70 (Pa. 2014).

In its Order denying Schoen's suppression Motion, the suppression court explained its reasons for denying suppression of Hudson's subsequent identification of Schoen as follows:

> In the instant case, the identifying witness was an ex-constable[,] who is very good at remembering faces.  He had about 15 minutes of direct contact with the person attempting to sell him guns in a well-lit store.  He was only a couple [of] feet

away from the person during this time. He consistently described the appearance of the man with whom he spoke. He was absolutely positive that he could identify the person in a photograph[,] even before he was shown one. He identified the man in the photograph as the man in his store immediately. This identification occurred a few weeks after the man was in the store. When he was shown a photo line-up containing eight photographs a couple of weeks later, he again picked out [Schoen] within seconds. He was absolutely positive[,] at all times[,] that the man he saw in the picture was the same man who was in his store. He distinctly remembered the person's appearance and attitude. The event stuck out in his mind because of the rarity and value of the guns the person was trying to sell. In addition, [] Hudson testified that the man in question was both a [federal firearms licensed dealer] and a pet sitter[,] even though no one had informed him of this fact prior to taking the stand. He testified that he was aware of this information because the man in the store gave him a business card that stated the same. [] Hudson was a very credible witness and after hearing his testimony and observing him in court, the court is of the opinion that his identification of [Schoen] resulted from his contact with the man in the store[,] and was not the result of a suggestive line-up….

Suppression Court Order, 12/19/16, at 4 n.1. The suppression court's findings are supported in the record.

At the suppression hearing, Hudson, the manager of the Delaware gun shop, testified that at some point in December 2015, he received a telephone call regarding weapons stolen from Fraser's home. N.T., 10/12/16, at 49. Prior to receiving that call, a man had brought in firearms matching the description of the firearms described in his telephone call with Fraser. *Id.* Hudson confirmed that a person had entered the gun shop, offering the firearms for sale. *Id.* at 50. Hudson described the firearms as follows:

The first one was a Beretta 683 Graystone sporting model. [Schoen] first approached up to the counter, laid the Beretta case up on the counter. I opened up the case, looked at the shotgun

and [k]new exactly what it was. Then I asked him, you know, he said I want to sell these. I said, well, what do you want for it? I wanted to get a feel if somebody wanted to sell, what did he want.

*Id.* Schoen requested $3,300 for the Berretta 683. *Id.* According to Hudson, he told Schoen that the price was too high, "especially after [Schoen] handed me a business card telling me he's a dealer." *Id.* at 50, 65. Hudson stated that he had declined to purchase the firearm at that price, telling Schoen that the weapon cost "only $2500 new." *Id.* at 50. Hudson described Schoen as "kind of arrogant." *Id.* at 51. Hudson stated, "I think [Schoen] thought a new one, the new model[,] is $4,200, and that was not the same gun. So I questioned his firearm knowledge." *Id.* at 66.

Schoen left the gun shop, then returned with a second firearm, which he also offered for sale. *Id.* at 51. Hudson declined to purchase the second firearm:

> I explained to [Schoen,] when I opened up the soft case, there was a rifle, a big caliber rifle, that we're not a rifle state in Delaware. You're not going to get as much money for it. … I think I told him that it would be around $850. I know the gun was worth more. I didn't expect him to sell it.

*Id.* Hudson also testified that the gun shop had "all brand new lighting"; he interacted with Schoen for about 10-15 minutes; and the firearms offered for sale were "unusual, very unusual guns." *Id.* at 51, 55. Hudson also stated that Schoen handed Hudson his business card, which included Schoen's name, his status as federally licensed firearms dealer, a picture, and that Schoen was a pet sitter. *Id.* at 65, 72.

Thus, our review of the record discloses that there is sufficient evidence of record to support the suppression court's findings, and the suppression court did not err in its legal conclusions. Schoen asks this court to re-visit the credibility findings of the suppression court. However, "it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony." **Commonwealth v. Jaynes**, 135 A.3d 606, 610 (Pa. Super. 2016). This court "will not substitute our credibility determinations for those of the suppression court judge." **Commonwealth v. Johnson**, 86 A.3d 182, 187 (Pa. 2014). Accordingly, we cannot grant Schoen relief on this claim.

Schoen next claims that the suppression court improperly found that the information in the Affidavit of Probable Cause was not "stale." Brief for Appellant at 15. Schoen contends that "[n]o facts exist within the four corners of the warrant to overcome [Schoen's] manifest intent to sell the guns, nor do they establish [that] the guns would be found in [Schoen's] residence more than seven weeks after the attempted sale." **Id.** at 16. Schoen asserts that there is no evidence of when the crimes "specifically *occurred*." **Id.** (emphasis added). According to Schoen, where, as here, police knew that Schoen "was allegedly actively seeking to dispose of the guns" in December 2015, there is nothing that would establish that the guns would still be at Schoen's residence eight weeks later. **Id.** at 17.

As our Supreme Court has explained,

[b]efore an issuing authority may issue a constitutionally valid search warrant[,] he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The requisite probable cause must exist at the time the warrant is issued and be based on facts closely related in time to the date of issuance.

*Commonwealth v. Jones*, 484 A.2d 1383, 1387 (Pa. 1984) (internal citations omitted).

Settled Pennsylvania law establishes that stale information cannot provide probable cause in support of a warrant. In particular:

[A]ge of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, we must also examine the nature of the crime and the type of evidence.

*Commonwealth v. Janda*, 14 A.3d 147, 158-59 (Pa. Super. 2013) (internal citation omitted).

In its Order denying Schoen's suppression Motion, the suppression court stated the following:

In this case, [Schoen] attempted to sell the stolen guns to [] Hudson a few weeks before the police obtained a search warrant. [Schoen] claims that this is too long and therefore, the information contained in the search warrant was stale. The court disagrees. The items [Schoen] wanted to sell were rare, expensive, stolen guns. In addition, [Schoen] wanted to sell them for more than they were worth. Considering the "hot" nature of the items, the rarity and value of the guns, and the difficulty of disposing of such items, it was not unreasonable for the magistrate to believe that the items described could still be found in [Schoen's] home. Thus, the court concludes that the information contained in the warrant was not stale.

- 10 -

Suppression Court Order, 12/19/16, at 4-5 n.1 (citation omitted). We agree, and affirm on this basis with regard to Schoen's second claim. *See id.*; *see also* N.T., 10/12/16, at 51 (wherein Hudson testified, "I think I told [Schoen that the rifle] was worth more. I didn't expect him to sell it.").

In his third claim, Schoen argues that the search warrant application was defective because there was not a factual basis, nor a sufficiently supported opinion, that firearms would be found in Schoen's home. Brief for Appellant at 18. Schoen contends that the averments in the Affidavit of Probable Cause failed to establish a nexus between the theft of the firearms and Schoen's residence. *Id.* at 19. According to Schoen, although the Affidavit discusses Sergeant Urbany's relevant experience, a nexus between that experience and the crime is not established. *Id.* at 20.

"In order for a magistrate to issue a valid warrant allowing the police to search for and seize evidence of a crime, the police must demonstrate probable cause to the magistrate that the items sought by the warrant have a connection to the crime or crimes under investigation." *Commonwealth v. Jones*, 988 A.2d 649, 667 (Pa. 2010). Consequently, it is the obligation of a reviewing court "to ensure that an affidavit in support of the issuance of such a warrant has furnished a substantial basis for a magistrate to conclude that probable cause of this required nexus exists." *Id.*

In determining whether particular averments establish probable cause, we are mindful of the principle that

> [p]robable cause … is a practical, non-technical conception requiring a consideration of the totality of the circumstances …. The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

**Commonwealth v. Wallace**, 42 A.3d 1040, 1048 (Pa. 2012).

Here, the suppression court found as follows:

> [I]t is reasonable to conclude that the stolen guns would not be concealed on [Schoen's] person, but rather[,] in a place under his control, such as his residence. … [I]t was reasonable to conclude that the property had not yet been disposed of. Where police are looking for stolen property, the logical inference is that the thief will return to a place where he expects privacy to conceal the proceeds of his crime. **See Commonwealth v. Fromal**, 572 A.2d 711, 718 (Pa. Super. 1990) (search warrant properly issued based on logical supposition that place to be searched was connected to the crime); **Commonwealth v. Crawford**, 466 A.2d 1079, 1081 (Pa. Super. 1983) (reasonable for issuing authority to conclude that proceeds from robbery would be at a place under suspect's control). Accordingly, the [suppression] court finds that there was a logical nexus between the stolen firearms and [Schoen's] residence.

Suppression Court Order, 12/19/16, at 5 n.1. We agree and affirm on this basis with regard to Schoen's third claim. **See id.**

In his fourth claim, Schoen argues that because the search warrant for his residence was unlawful, his statement to police "after they found the firearms should have been suppressed as the "fruit of the poisonous tree." Brief for Appellant at 22. However, we have concluded that Schoen's challenges to the validity of the search warrant lack merit. Consequently, his

statement was not the "fruit of the poisonous tree," and we cannot grant him relief on this claim.

Finally, Schoen challenges the legality of his sentence. *Id.* at 23. Schoen argues that the trial court improperly imposed restitution as a part of his sentence. *Id.* In this regard, Schoen points out that there was no loss to Fraser, because the firearms were returned to him. Further, there was no evidence presented at the sentencing hearing that the insurer of the firearms had suffered a loss. *Id.* at 25. On this basis, Schoen contends that the restitution portion of his sentence should be reversed. *Id.* at 26.

As this Court has explained,

[i]n the context of criminal proceedings, an order of "restitution is not simply an award of damages, but, rather, a sentence." *Commonwealth v. C.L.*, 963 A.2d 489, 494 (Pa. Super. 2008). An appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. *Commonwealth v. Redman*, 864 A.2d 566, 569 (Pa. Super. 2004), *appeal denied*, 583 Pa. 661, 875 A.2d 1074 (2005). "The determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary." *Commonwealth v. Hughes*, 986 A.2d 159, 160 (Pa. Super. 2009).

*Commonwealth v. Stradley*, 50 A.3d 769, 771-72 (Pa. Super. 2012).

Mandatory restitution, as a part of a defendant's sentence, is authorized by 18 Pa.C.S.A. § 1106. Section 1106 provides, in relevant part, as follows:

§ **1106. Restitution for injuries to person or property**

**(a) General rule**.—Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of

the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

* * *

**(c) Mandatory restitution.—**

**(1)** The court shall order full restitution:

**(i)** Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss.

* * *

**(2)** At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:

**(i)** Shall consider the extent of injury suffered by the victim, the victim's request for restitution ... and such other matters as it deems appropriate.

**(ii)** May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just.

* * *

**(4)**

**(i)** It shall be the responsibility of the district attorneys of the respective counties to make a recommendation to the court at or prior to the time of sentencing as to the amount of restitution to be ordered.  This recommendation shall be based upon information solicited by the district attorney and received from the victim.

**(ii)** Where the district attorney has solicited information from the victims as provided in subparagraph **(i)** and has received no response, the district attorney shall, based on other available information, make a recommendation to the court for restitution.

18 Pa.C.S.A. § 1106.

Here, the Commonwealth concedes that,

> [w]hile the Commonwealth believes sufficient restitution information was provided to the trial court, it is constrained to acknowledge that such information is not part of the record that can be considered by this Court. Consequently, the Commonwealth believes that the case should be remanded to the trial court for a hearing to properly determine the restitution [Schoen] owes to the victim.

Brief for the Commonwealth at 27.

Our review of the record discloses that at the sentencing hearing, the prosecutor asked for restitution in the amount of $3,748.26. N.T., 3/28/17, at 4. The prosecutor stated that restitution was to be paid to "Allstate Insurance. That was the insurance payout that the victim received once he filed a claim for the burglary." *Id.* Restitution would also be paid to the victim for the deductible amount of $1,000. *Id.*

The Commonwealth concedes that the prosecutor's statement regarding restitution is not supported by any evidence of record. Brief for the Commonwealth at 27-28. The Commonwealth explains that, although information regarding restitution was in the Commonwealth's sentencing memorandum, it was not officially filed of record. *Id.* at 28.

"[A]n appellate court cannot consider anything which is not part of the record in the case ... because for purposes of appellate review, what is not of record does not exist." *Commonwealth v. Johnson*, 33 A.3d 122, 126 n. 6 (Pa. Super. 2011) (citations and internal quotation marks omitted).

Although there is no evidence supporting the amount of restitution ordered by the trial court, our review of the record discloses that the trial court considered restitution to be an integral part of its sentence. ***See*** N.T., 3/28/17, at 4 (wherein the trial court asked the Commonwealth whether it was seeking restitution), 23 (wherein the trial court instructed Schoen, "I want the restitution paid off first. Frankly, no matter what you do, get the restitution paid."). As such, we deem it necessary to vacate the trial court's judgment of sentence in its entirety, and remand for a new sentencing hearing, during which the trial court can ascertain whether the award of restitution is warranted, and the impact of that determination on the court's overall sentencing scheme. ***See Commonwealth v. Barton-Martin***, 5 A.3d 363, 370 (Pa. Super. 2010) (providing that where vacating a sentence disrupts a trial court's overall sentencing scheme, this Court will remand to the trial court for resentencing).

Judgment of sentence vacated. Case remanded for a sentencing hearing and resentencing consistent with this Memorandum. Superior Court jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/1/18