J-S08012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| NORMAN J. BARONY, JR. | |
| Appellant | No. 475 WDA 2016 |

Appeal from the Judgment of Sentence dated March 15, 2016
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0000649-2012
CP-07-CR-0000650-2012

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and SOLANO, J.

MEMORANDUM BY SOLANO, J.:                    **FILED MAY 23, 2017**

Appellant, Norman J. Barony, Jr., appeals from the March 15, 2016, aggregate judgment of sentence of one to ten years' incarceration, imposed following a bench trial that resulted in Appellant's conviction of two counts each of conspiracy – manufacture, delivery, or possession of a controlled substance with an intent to manufacture or deliver; intentional possession of a controlled substance by a person not regulated; use/possession of drug paraphernalia; and manufacture, delivery, or possession of a controlled substance with intent to manufacture or deliver.[1]  We affirm.

In its opinion and order entered August 13, 2013 and its opinion and order entered August 28, 2014, the trial court fully and correctly sets forth

---

[1] 18 Pa.C.S. § 903 and 35 P.S. § 780-113(a)(16), (32), (30), respectively.

the relevant facts of this case. *See* Trial Ct. Op., 8/13/13, at 1-3; Trial Ct. Op., 8/28/14, at 2-6. Thus, we have no reason to restate them at length here.

This case involves telephone conversations from July 27 to August 4, 2011, between Appellant and a now-deceased confidential informant that were recorded by Pennsylvania State Police with the informant's consent. Trial Ct. Op., 8/28/14, at 3 (citing N.T., 5/30/13, at 12). The conversations were about a marijuana growing operation.[2]

The case also involves a "trash pull" by the Pennsylvania State Police from a road near Appellant's residence. The "trash pull" was conducted on August 4, 2011, subsequent to the recorded phone calls, by Pennsylvania State Trooper Charles Schaefer, who has been employed by the Pennsylvania State Police since 1995 and "has been primarily investigating drug offenses since January of 1998." It was done on Pine Street, a road near Appellant's residence that is marked as a "private drive." Trial Ct. Op., 8/13/13, at 1-2, 8, 11 (citing N.T., 5/30/13, at 14); Trial Ct. Op., 8/28/14, at 2, 4 (citing N.T., 5/30/13, at 14). "Burgmeier's Hauling had access to this street, and Trooper Schaefer rode with the hauling company to collect the trash that had been discarded or abandoned" there Trial Ct. Op., 8/13/13, at 8; *see also id.* at 2 (citing N.T., 5/30/13, at 14); Trial Ct. Op., 8/28/14,

---

[2] According to Appellant's Brief, at 8, the confidential informant died on October 10, 2012.

at 4. The trash had been put "out from the house along the roadway" on a date after the previous times Trooper Schaefer had driven by that house. N.T., 5/30/13, at 14. As a result of the trash pull, Trooper Schaefer found "indicia indicating the residence was [Appellant]'s," a marijuana stem, and an empty box of Herbal Clean — a substance used to clean tetrahydrocannabinol ("THC") out of a person's system prior to a drug test. Trial Ct. Op., 8/13/13, 2-3, 11 (citing N.T., 5/30/13, at 14-16, 21); Trial Ct. Op., 8/28/14, at 4 (citing N.T., 5/30/13, at 15).

Following the trash pull, on August 5, 2011, Trooper Schaefer obtained a warrant to search Appellant's house. Trial Ct. Op., 8/13/13, at 3; Trial Ct. Op., 8/28/14, at 5-6 (citing Commonwealth's Ex. 1). During the resulting search, troopers found nine marijuana plants, growing paraphernalia, and marijuana seeds in Appellant's bedroom. Criminal charges were filed against Appellant based on this evidence. *Id.* at 6.

On September 12, 2012, Appellant filed an omnibus pretrial motion, which included a motion to suppress the trash pull and a motion to suppress the evidence obtained during execution of the search warrant for insufficient probable cause and for staleness of the information upon which the warrant was based. On August 13, 2013, the trial court denied the motions to suppress the trash pull and the evidence from the search.

Between September 2013 and November 2014, the trial court granted at least nine motions for continuance. Appellant was scheduled to plead

guilty on January 12, 2015, but, during his colloquy, he changed his mind and asked to go to trial. Appellant was convicted on November 20, 2015, and sentenced on March 15, 2016.

On April 4, 2016, Appellant filed a notice of appeal to this Court. Appellant raises three questions for our review:

> I. Whether the trial court erred by denying Appellant's motion to suppress with regard to the legality of the trash pull[.]
>
> II. Whether the trial court erred by denying Appellant's motion to suppress based on insufficient probable cause for issuance of a search warrant due to the unreliability of the confidential informant and the violation of Appellant's Sixth Amendment right to confront witnesses against him[.]
>
> III. Whether the trial court erred by denying Appellant's motion to suppress despite the use of stale information as the basis for the search warrant[.]

Appellant's Brief at 5.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Freeman*, 150 A.3d 32, 34–35 (Pa. Super. 2016) (citations omitted).

Appellant's first issue is that the trial court erred by denying his motion to suppress with regard to the legality of the trash pull. Appellant's Brief at 11. Appellant contends that he had "an actual or subjective expectation of privacy with respect to the bag searched and seized by Trooper Schaefer" and that his "actual and subjective expectation of privacy in the materials located on his property and in the curtilage is one which society is prepared to accept as reasonable." *Id.* at 13, 15. He adds that "[t]he bag seized by Trooper Schaefer was neither voluntarily relinquished into the hands of third parties" nor "located in an area sufficiently exposed to the public to defeat Appellant's claim to protection under the Fourth Amendment and Article I, Section 8" of the Constitution of Pennsylvania. *Id.* at 16, 18.

Appellant's third issue is that "the trial court erred by denying [his] motion to suppress despite the use of stale information as the basis for the search warrant" – specifically, the information Trooper Schaefer obtained from the confidential informant. Appellant's Brief at 26, 28. Appellant contends that "all evidence seized during the execution of the search warrant and all fruit of the poisonous tree discovered thereafter should have been suppressed from trial." *Id.* at 31.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Elizabeth A. Doyle, we conclude that Appellant's first and third issues merit no relief. The trial court opinion of August 13, 2013, comprehensively discusses and properly disposes of Appellant's first issue, relating to his motion to suppress the trash pull.[3] The trial court opinion of August 28, 2014, comprehensively discusses and properly resolves Appellant's third issue, relating to his motion to suppress evidence seized pursuant to the search warrant "despite the use of stale information," noting in particular that the search warrant was based on information from the trash pull that was not stale [4]

_____

[3] **See** Trial Ct. Op., 8/13/13, at 3-8 (holding: (1) the law is clear that putting trash out for collection is an act of abandonment that terminates Fourth Amendment protections, citing **Commonwealth v. Perdue**, 564 A.2d 489 (Pa. Super. 1989), **appeal denied**, 574 A.2d 68 (Pa. 1990); (2) Appellant's argument that he did not contract with Burgmeier's Hauling for garbage removal "does not alter the pertinent inquiry . . . as to whether the trash was discarded or abandoned so as to terminate [Fourth] Amendment protections"; (3) the trash was "away from the house along Pine Street," "was at the end of a cement driveway on [Appellant's] property," and was set out in bags "as close to the road as possible without blocking traffic"; (4) the location of the trash placement does not qualify as curtilage and hence does not have a heightened expectation of privacy (citing N.T., 5/30/13, at 14); (5) other Pine Street property owners had also placed their trash alongside the street for collection; and (6) Pine Street, notwithstanding the "private drive" sign and "the fact that the street was not a through street" was not a private road because the sign did not preclude public access, it had no gatekeepers, other residents lived on the street, and the garbage hauling company had access to the street (citing **Id.** at 37, 59)).

[4] See Trial Ct. Op., 8/28/14, at 8-9 (holding: (1) the trash pull occurred on August 4, 2011; (2) the affidavit of probable cause for the search warrant was dated August 5, 2011, the search warrant was issued that same day,

*(Footnote Continued Next Page)*

Appellant's remaining claim is that there was "insufficient probable cause for issuance of a search warrant due to the unreliability of the confidential informant and the violation of Appellant's Sixth Amendment right to confront witnesses against him." Appellant's Brief at 20. Appellant states that the confidential informant "was unreliable because he passed away in the midst of the case and was not able to have his actions and motive verified." *Id.* at 20-21. Appellant concedes, however, that the confidential informant died after his suppression hearing. *Id.* at 8.

"The requisite probable cause must exist at the time the warrant is issued and be based on facts closely related in time to the date of issuance." *Commonwealth v. Jones*, 484 A.2d 1383, 1387 (Pa. 1984). Contrary to Appellant's claim, he could have called the confidential informant to testify at the suppression hearing because the informant was still alive at that time. Although Appellant had that opportunity, he chose not to exercise it. *See Commonwealth v. Bonasorte*, 486 A.2d 1361, 1374 (Pa. Super. 1984) (*en banc*) (defendant may obtain production of a confidential informant at a suppression hearing if he shows that production is material to his defense, reasonable, and in interest of justice); *Commonwealth v. Johnson*, 33 A.3d 122, 127 (Pa. Super. 2011) (same), *appeal denied*, 47 A.3d 845 (Pa. 2012); *Commonwealth v. Baker*, 946 A.2d 691, 693 (Pa. Super. 2008).

*(Footnote Continued)* ───────────

and the affidavit referenced the evidence from the trash pull that occurred the prior day; and (3) "[t]here is nothing about the facts to indicate that the criminal activity was attenuated by the passage of time").

Even without the recorded calls between Appellant and the confidential informant, the evidence from the legal trash pull of the marijuana stem, the empty Herbal Clean container, and indicia of Appellant's residency were sufficient to establish probable cause to support the search warrant at the time it was issued. **See Jones**, 484 A.2d at 1387; **see also** Trial Ct. Op., 8/13/13, 2-3, 11 (citing N.T., 5/30/13, at 14-16, 21); Trial Ct. Op., 8/28/14, at 4 (citing N.T., 5/30/13, at 15). Therefore, Appellant's claim that the trial court erred in denying his motion to suppress the evidence obtained by police during the execution of the search warrant is meritless. **See id.**; **compare** Appellant's Brief at 20-21.

For the reasons stated above, we affirm the judgment of sentence. The parties are instructed to attach a copy of the trial court's opinion of August 13, 2013, and its opinion of August 28, 2014, to all future filings that reference this Court's decision.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/23/2017

IN THE COURT OF COMMON PLEAS OF BLAIR COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,  :

            v.  :     2012 CR 652

MARIANNE BARONY,  :     2012 CR 650

   and  :

NORMAN BARONY,  :
Defendants.  :
                   :

| ELIZABETH A. DOYLE | PRESIDING JUDGE |
| --- | --- |
| DEREK ELENSKY, ESQ. | COUNSEL FOR COMMONWEALTH |
| ROBERT DONALDSON, ESQ. | COUNSEL FOR DEFENDANTS |

## OPINION AND ORDER

AND NOW, this 13ᵗʰ day of August, 2013, this matter having come before the court on an Omnibus Pretrial Motion, it is ripe to decide.

## FACTS

The facts as found from the transcript are as follows:

Trooper Charles Schaefer of the Pennsylvania State Police (PSP) has been employed with the PSP since 1995 and has been primarily investigating drug offenses since January of 1998. Sometime before August 4, 2011, he began an investigation on a Mark Heverly about a marijuana growing operation. Through that investigation and cooperation of Mr. Heverly, Trooper Schaefer received

1

information that Norman Barony ("Defendant"), was working with Mr. Heverly in this grow operation.

Trooper Schaefer investigated the matter further to confirm the information he was receiving from his informant. This investigation included background on the Defendant that included the Defendant's residence. Transcript, pg. 11. Trooper Schaefer consensualized Mr. Heverly and phone conversations were recorded between Mr. Heverly and the Defendant about the grow operation. Trooper Schaefer drove around the residence of the Defendant on more than one instance to determine when trash would be put out for pickup. This investigation was conducted prior to August 4, 2011. Transcript, pg. 12.

On August 4, 2011, Trooper Schaefer conducted a trash pull at 127 Pine Street, Tyrone, the Defendant's residence. The Trooper rode on a Burgmeier's Hauling Truck to perform the trash pull. The trash was put out along the road on Pine Street, away from the house. The trash was not out by the road the previous times Trooper Schaefer drove by the Defendant's house. Transcript, pg. 14. The trash was pulled by the Trooper and a Burgmeier employee and was placed separately from the other trash being collected by the hauling company.

Trooper Schaefer inspected the trash that was seized from the Defendant's residence at 127 Pine Street. The trash included a long marijuana stem, Herbal Clean, and indicia indicating that 127 Pine Street was the Defendant's residence. Transcript, pg. 15.

2

Trooper Schaefer testified that the marijuana stem was both long and cut, indicating the probable existence of marijuana plants. Transcript, pg. 20. The Herbal Clean is a substance that can be used to clear out THC from a person's system. Transcript, pg. 21.

As a result of the trash pull and the other investigation performed by Trooper Schaefer, a search warrant was prepared and approved on August 5, 2011. The search warrant was executed on August 6, 2011. As a result of the executed search warrant and investigation by Trooper Schaefer, charges were filed against both the Defendant and his wife, Mrs. Marianne Barony.

On September 12, 2012, an Omnibus Pre-Trial Motion was filed on behalf of both Defendants, Mr. and Mrs. Barony. A hearing was held May 30, 2013 in which testimony was taken as to the Motion to Suppress the trash pull.

## DISCUSSION

### Legality of the Trash Pull

"No one has a standing to complain of a search and seizure of property that he has voluntarily abandoned. The determination of whether or not there has been an abandonment of property is an ultimate fact, dependent upon the purported act of abandonment and the manifested intent of the person alleged to have abandoned the property. The test for abandonment is whether the complaining party could retain a reasonable expectation of privacy in the property allegedly abandoned. Placing trash for collection is an act of abandonment which terminates any Fourth Amendment protection." Commonwealth v. Perdue, 564

3

A.2d 489 (Pa. Super. 1989), *citing* <u>Commonwealth v. Shoatz</u>, 366 A.2d 1216, 1220 (Pa.1976), *citing* <u>Commonwealth v. Sero</u>, 387 A.2d 63, 69 (Pa.1978), *citing* <u>Commonwealth v. Minton</u>, 432 A.2d 212 (Pa.Super.1981).

"It is axiomatic that a defendant has no standing to contest the search and seizure of items which he has voluntarily abandoned. A criminal defendant has no privacy expectation in property that he has voluntarily abandoned or relinquished. That is, before a defendant can challenge the seizure of physical evidence, he must demonstrate that he had both a possessory interest in the evidence and a legally cognizable expectation of privacy in the area from which the evidence was seized. ... Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances at the time of the alleged abandonment should be considered. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. In other words, abandonment can be established where an individual's surrender of possession of the property constitutes such a relinquishment of interest in the property that a reasonable expectation of privacy may no longer be asserted." <u>Commonwealth v. Byrd</u>, 987 A.2d 786 (Pa. Super. 2009). *citing* <u>Commonwealth v. Tillman</u>, 621 A.2d 148 (Pa. Super 1993); *citing* <u>Commonwealth v. Pizarro</u>, 723 A.2d 675 (Pa. Super. 1998); *citing*

4

Commonwealth v. Clark, 746 A.2d 1128 (Pa. Super. 2000); *citing* Commonwealth v. Shoatz, 366 A.2d 1216 (Pa.1976).

In California v. Greenwood, 486 U.S. 35, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988), the United States Supreme Court upheld the warrantless search and seizure of garbage left for collection outside the defendant's home. Specifically, the Court concluded that the defendant failed to demonstrate a subjectively reasonable expectation of privacy in his discarded trash. Similarly, the Pennsylvania Courts have long held that a person has no reasonable expectation of privacy in items voluntarily abandoned as garbage in a public space. *See, e.g.,* Commonwealth v. Perdue, 387 Pa. Super. 473, 564 A.2d 489, 493 (Pa. 1989), *appeal denied,* 574 A.2d 68 (Pa. 1990). However, as this line of reasoning speaks to garbage left for collection in an area accessible to the public, the location of the garbage seized is of paramount importance. *See Greenwood, supra* at 40-41, Commonwealth v. James, 12 A.3d 388 (Pa. Super. 2010).[1]

Where a Defendant challenges the affidavit of probable cause alleging ambiguities or omissions, specifically as to the legality of a trash pull, such challenges must be resolved with evidence beyond the affidavit's four corners. Testimony that allowed the suppression court to rule on abandonment, including the specific location where the trash was located, was necessary in the Court's determination of whether the facts would be included or stricken as to the search warrant. Commonwealth v. James, 2013 WL 2360949 (Pa. 2013).

---

[1] This case was overturned by Commonwealth v. James, 2013 WL 2360949 (Pa. 2013) to allow for testimony outside of the four corners of the affidavit of probable cause and not for the law as to trash pulls/abandoned property.

5

On August 4, 2011, Trooper Schaefer conducted a trash pull at 127 Pine Street, Tyrone. As his testimony set forth, previous to August 4, 2011, Trooper Schaefer drove by this residence to see when the trash would be discarded. Transcript, pg. 12. The times he drove by the residence previous to this trash pull, there was no trash along the roadway. Transcript, pg. 12. On August 4, 2011, Trooper Schaefer testified that the trash was "away from the house along Pine Street." Transcript, pg. 12. There were several trash bags set out on the properties on Pine Street the day of the trash pull. Transcript, pg. 37-38. The trash was not in a wooden storage container. Trooper Schaefer testified that based on his training and experience, if the trash had been in the wooden storage container, he would not have considered it abandoned. Transcript, pg. 13, 14, 60. The trash was set out in bags alongside Pine Street when collected. Transcript, pg. 12. The trash was placed as close to the road as possible without blocking traffic. Trooper Schaefer was clear that the trash was at the end of a cement driveway on the Barony's property. Transcript, pgs. 43-44.

The law is clear that trash put out for collection is an act of abandonment which terminates 4th Amendment protections. The test is to look to at the surrounding facts to determine if the trash bags were discarded. The facts and testimony in this case set forth that this trash was abandoned and discarded. There was no trash out on previous occasions when Trooper Schaefer went by the property. The trash was not in a wooden storage area. Transcript, pg. 42. The trash was set alongside the street.at the time when other property owners along that street had set their trash alongside the street for pick-up. There was

6

no testimony that the trash was alongside the street for any other purpose than trash pick-up. As set forth in California v. Greenwood, trash set out is readily accessible to animals, children, scavengers, snoops, and other members of the public. California v. Greenwood, 486 U.S. 35, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988).

The Defendants argue that they did not contract with Burgmeier's Hauling for their garbage and that Trooper Schaefer was violating the law by collecting the trash bags. The Court rejects this argument finding that it does not alter the pertinent inquiry. As set forth above, the inquiry is as to whether the trash was discarded or abandoned so as to terminate 4th Amendment protections. Here, the trash was put alongside the street away from the house. It had been moved from wherever it was previously located, and was not in any wooden storage container. We find that the trash was put alongside the street voluntarily and was abandoned property, in which there was no longer an expectation of privacy. The Defendants argue that the trash was located within curtilage of their home and cite Commonwealth v. Lemanski, 529 A.2d 1085 (Pa. Super.1987) in their brief. This case is distinguished from Lemanski, in which officers parted shrubbery and peered with binoculars into someone's home. The trash was also not along curtilage of the home. Trooper Schaefer again testified that the trash was "away from the house along Pine Street." Transcript, pg. 12.

An area away from the house along the street does not fall under the definition of curtilage set out in the case law. The Defendants' argument that this trash pull was a violation of their rights because of a private drive sign also fails.

7

This was a named street, Pine Street. There was no gate keeping individuals out of the area. Transcript, pg. 59. Trespassing signs were not posted. Transcript, pg. 59. This street did not just lead to the residence of Defendants, but several other houses as well. Transcript, pg. 37, 59. Burgmeier's Hauling had access to this street and Trooper Schaefer rode with the hauling company to collect the trash that had been discarded or abandoned.

The Defendants have established that there is a sign on Pine Street that says "private drive". This does not preclude traffic on the street. The street contained multiple houses and the private drive sign did not prevent public access of and on to the street. Transcript, pg. 37. The fact that a sign on the street said "Private Drive" and the fact that the street was not a through street does not create a heightened expectation of privacy in garbage.

## II  Probable Cause for the Search Warrant

Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. Commonwealth v. Smith, 784 A.2d 182,186 (Pa. Super. 2001)(citing Commonwealth v. James, 506 Pa. 526, 486 A.2d 376 (Pa.1985)). This Commonwealth has established the following standard for determining whether a search warrant affidavit contains sufficient probable cause:

8

Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. (citations omitted) The information offered to demonstrate probable cause must be viewed in a common sense, nontechnical, ungrudging and positive manner. (citations omitted) It must also be remembered that probable cause is based on a finding of the probability, not a prima facie showing of criminal activity, and that deference is to be accorded a magistrate's finding of probable cause. (citations omitted) Hearsay information is sufficient to form the basis of a warrant so long as the magistrate has been provided with sufficient information to make a "neutral" and "detached" decision about whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . concluding that probable cause existed." Commonwealth v. Rivera, 816 A.2d 282,291 (Pa. Super. 2003); Commonwealth v. Baker, 532 Pa. 121, 615 A.2d 23,25 (Pa. 1992) (quoting Commonwealth v. Gray, 509 Pa. 476, 503 A.2d 921 (Pa. 1985)), (citing Illinois v. Gates, 462 U.S. 213, 236, 103 S. Ct. 2317,2332, 76 L. Ed. 2d 527,547 (1983))); See also Commonwealth v. Torres, 564 Pa. 86,96, 764 A.2d 532,537 (Pa. 2001) (quoting Commonwealth v. Gray, 509 Pa. 476, 484, 503 A.2d 921, 925 (Pa.1986)(quoting Illinois v. Gates, 462 U.S. 213,238-39, 103 S. Ct. 2317,2332); See also Commonwealth v. Jones, 506 Pa. 262,269, 484 A.2d 1383,1387 (Pa.1984).

9

"The requisite probable cause must exist at the time the warrant is issued and be based on facts closely related in time to the date of issuance". Jones, 506 Pa. at 269, 484 A.2d at 1387; Commonwealth v. Tolbert, 492 Pa. 576, 424 A.2d 1342 (Pa.1981); Commonwealth v. Jackson, 461 Pa. 632, 337 A.2d 582, cert. denied, 423 U.S. 999, 96 S.Ct. 432, 46 L.Ed.2d 376 (1975); Commonwealth v. Eazer, 455 Pa. 320, 312 A.2d 398 (Pa.1973); Commonwealth v. McCants, 450 Pa. 245, 299 A.2d 283 (Pa.1973); Commonwealth v. Simmons, 450 Pa. 624, 301 A.2d 819 (Pa.1973). Further, "[i]f the [Magisterial District Judge] is presented with evidence of criminal activity at some prior time, it must also be established that the criminal activity continued up to the time of the request for the warrant in order to support a finding of probable cause." Jones, 506 Pa. at 269, 484 A.2d at 1387; Tolbert, 492 Pa. 576, 424 A.2d 1342; Jackson, 461 Pa. 632, 337 A.2d 582; Commonwealth v. Shaw, 444 Pa. 110, 281 A.2d 897 (Pa.1971).

It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Gray, 509 Pa. at 484, 503 A.2d at 925. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

Torres, 564 Pa. at 96-97, 764 A.2d at 537-38 (citing Commonwealth v. Jones, 542 Pa. 418, 668 A.2d 114, 117 (Pa.1995) (opinion announcing the judgment of the Court)); See also Jones, 506 Pa. at 296, 484 A.2d at 1387.

10

In this case, Trooper Schaefer, an experienced officer in drug investigations who has been qualified previously as an expert, received information that the Baronys were cultivating marijuana plants. He "pulled" their trash and the contents of the trash collected contained a marijuana stem, Herbal Clean, and indicia indicating the residence was Norman Barony's. Transcript, pg. 15, 16. The marijuana stem was long and cut which would indicate the probability of marijuana plants. Transcript, pg. 20. Trooper Schaefer was able to use part of the marijuana stem for a NIK test, the test being positive for marijuana. Transcript, pgs. 28-33. Trooper Shaffer testified that the Herbal Clean can be used to try to clean out THC, the active ingredient in marijuana, from a person's system. Transcript, pg. 20 – 21. All this information was contained in the search warrant. Based on the above, the Court finds there was probable cause for issuance of the search warrant.

IN THE COURT OF COMMON PLEAS OF BLAIR COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,  :

v.  :  2012 CR 652
  :  2012 CR 650
MARIANNE BARONY,  :
  :
and  :
  :
NORMAN BARONY,  :
Defendants.  :
  :
  :

ELIZABETH A. DOYLE          PRESIDING JUDGE

DEREK ELENSKY, ESQ.          COUNSEL FOR COMMONWEALTH

ROBERT DONALDSON, ESQ.          COUNSEL FOR DEFENDANTS

## **ORDER**

Based on the forgoing, the Court must issue the following order:

AND NOW, this 13ʳ day of August, 2013, the defendant's Omnibus

Pre-Trial Motion is denied and dismissed. The case(s) is/are listed for trial list

review on August 26th, 2013.

By the Court,

_____J.

Elizabeth A. Doyle

12

IN THE COURT OF COMMON PLEAS OF BLAIR COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| v. | : | 2012 CR 650 |
| | : | 2012 CR 649 |
| NORMAN BARONY, | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| v. | : | 2012 CR 652 |
| MARIANNE BARONY, | : | |
| Defendants. | : | |

| | |
|---|---|
| ELIZABETH A. DOYLE | PRESIDING JUDGE |
| PETER WEEK, ESQ. | ASST. DISTRICT ATTORNEY |
| DEREK ELENSKY, ESQ. | ASST. DISTRICT ATTORNEY |
| PHILIP MASORTI, ESQ. | COUNSEL FOR DEFENDANT |
| THOMAS DICKEY, ESQ. | COUNSEL FOR DEFENDANT |

**OPINION AND ORDER** *(August 28, 2014)* EAD

## OPINION

In these two related and joined cases, the Commonwealth has charged Norman and Marianne Barony with Possession to Deliver a Controlled Substance, 35 Pa. C.S. 780-113 (a)(30), Criminal Conspiracy to Possess a Controlled Substance, 18 Pa. C.S.A. 903 (a) (1), and related offenses. Defendants have filed Omnibus Pretrial Motions, which the Court partially denied on August 13, 2013, and November 14, 2013. The

1

#46

August Opinion and Order upheld the constitutionality of a "trash pull" by the state police that led to a search warrant in the case. The November 14, 2013 Order dismissed any remaining issue in the Omnibus Pretrial Motion. Thereafter the Defendants filed a Motion to Vacate Order, asserting that the Commonwealth has not established a sufficient record to support the dismissal of the outstanding issues. In that Motion, the Defendants repeated the averments in the original Omnibus Pretrial Motion and any supplemental Omnibus Pretrial Motion[1] and specifically repeat a challenge to the reliability and credibility of the Confidential Informant, who has now passed away. Also outstanding is Defendant's Objection to New, Aggravated Crime with Mandatory Minimum Terms, and a Motion to Declare 42 Pa. C.S.A. 9712 (Sentences for Offenses Committed With Firearms) and 18 Pa. C.S.A. 7508 (Drug Trafficking Sentencing and Penalties) Unconstitutional. A Habeas Corpus petition was filed by new counsel for Marianne Barony. The Court will document disposition for each of these motions or petitions.

Facts

The facts as found from the transcripts of May 30, 2013 and February 28, 2014 are as follows:

Trooper Charles Schaefer of the Pennsylvania State Police (PSP) has been employed with the PSP since 1995 and has been primarily investigating drug offenses since January of 1998. The Court has

---

[1] Although at the time of filing of the Motion to Vacate Order, it was made only as to Norman Barony, the Court has extended its analysis to Marianne Barony as well.

2

accepted him as an expert witness in the field of drug investigation and identification. Sometime before August 4, 2011, he began an investigation on a Mark Heverly about a marijuana growing operation. Through that investigation and cooperation of Mr. Heverly, Trooper Schaefer received information that Norman Barony ("Defendant"), was working with Mr. Heverly in this grow operation.

Trooper Schaefer investigated the matter further to confirm the information he was receiving from his informant. This investigation included background on the Defendant that included the Defendant's residence. Trooper Schaefer consensualized Mr. Heverly by having him meet with First Assistant District Attorney Jackie Bernard. Attorney Bernard met with Mr. Heverly on July 27, 2011. She had a direct conversation with him alone to make a determination about whether he understood what was being asked of him in terms of acting as a confidential informant and having his voice recorded and to make sure he was not being forced or coerced in any way to do so. After speaking with Mr. Heverly Attorney Bernard was convinced that he was not under the influence of any substance, was aware of what he was doing, and was acting voluntarily. In performing the consensualization as she did, Attorney Bernard complied with the provisions of the Wire Tap Act.

Subsequently, telephone conversations were recorded between Mr. Heverly and the Defendant about the grow operation. Trooper Schaefer drove around the residence of the Defendant on more than one instance

3

to determine when trash would be put out for pickup. This investigation was conducted prior to August 4, 2011. 5/30/13 Transcript, pg. 12.

On August 4, 2011, Trooper Schaefer conducted a trash pull at 127 Pine Street, Tyrone, the Defendant's residence. The Trooper rode on a Burgmeier's Hauling Truck to perform the trash pull. The trash was put out along the road on Pine Street, away from the house. The trash was not out by the road the previous times Trooper Schaefer drove by the Defendant's house. 5/30/13 Transcript, pg. 14. The trash was pulled by the Trooper and a Burgmeier employee and was placed separately from the other trash being collected by the hauling company.

Trooper Schaefer inspected the trash that was seized from the Defendant's residence at 127 Pine Street. The trash included a long marijuana stem, Herbal Clean, and indicia indicating that 127 Pine Street was the Defendant's residence. 5/30/13 Transcript, pg. 15. Trooper Schaefer testified that any marijuana you get, whether it is street marijuana or marijuana that you grow, has stems in it. However, in the street or Mexican marijuana the stems are ground up and small. They usually do not have uniform cuts. The marijuana stem Trooper Schaefer found in the Defendants' trash was both long (four inches) and cut, indicating that came from a plant, thus demonstrating the probable existence of marijuana plants. 5/30/13 Transcript, pg. 20. Trooper Schaefer took a pistil from the stem and performed a NIK test on it. The test changed colors, indicating a positive result for marijuana. The

4

Herbal Clean is a substance that can be used to clear out THC from a person's system if they have to take a drug test. 5/30/13 Transcript, pg. 21. Taken together, the presence of the Herbal Clean and the long marijuana stem led Trooper Schaefer to believe that the Defendants were engaged in illegally growing marijuana plants.

After the trash pull, Trooper Schaefer prepared a search warrant. In the Affidavit of Probable Cause Trooper Schaefer listed his training and experience in drug enforcement over the past 16 years in a 17-line paragraph, including that he had attended a Marijuana Eradication course that focused on marijuana growing techniques. He referred to the trash pull and stated, "This officer recovered a marijuana stem, an empty box of Herbal Clean and indicia of occupancy for Norman Baroney (sic) and Marianne Baroney (sic). This officer was able to field test part of the marijuana stem using the NIK identification system and same tested positive for marijuana. This officer also notes that the end of the stem was longer than stems found in processed marijuana and was clearly cut at one end. This is of importance as marijuana that is purchased on the street is generally ground and pressed. This tends to create shorter stems and uneven edges at the end of the stems. The stem in this case is more likely from "home grown" marijuana. This officer also knows through training and experience that the Herbal Clean is often used by marijuana users to clear their systems of THC (Tetra-hydrocannabinol) for urine tests. This officer knows through training and experience that marijuana

5

growers/users often maintain a stash of marijuana for their personal use. This officer also knows that this stash is kept in a location under their dominion and control such as their person, residence or securable outbuildings, etc." Search Warrant, Com. Ex 1, 5/30/13 hearing. The premises to be searched was the Barony residence.

The search warrant was approved by the court on August 5, 2011. The search warrant was executed on August 6, 2011. As a result of the executed search warrant, nine marijuana plants, growing paraphernalia and marijuana seeds were found in the Barony's bedroom. The instant charges were then filed against both the Defendant and his wife, Mrs. Marianne Barony.

## Discussion

In the Motion to Suppress, which is divided into multiple parts, Defendants first challenge an illegal aerial search. There was none. They withdrew this challenge. The Court will address their next challenges in order.

## Motion to Suppress-Illegal Trash Pull

This was decided separately by the Court in its Order of August 13, 2013. The troopers did not act improperly in conducting the trash pull. The Defendants had abandoned the trash.

6

## Motion to Suppress- False Information in Affidavit of Probable Cause

The Defendants allege that false information was included in the affidavit of probable cause because, they assert, the stem that Trooper Schaefer found in their trash was not marihuana as defined in 35 P.S. 780-102. They further state that Herbal Clean is not contraband and should not have been considered by the Court in its determination of whether probable cause existed for the search warrant.

It is hornbook law that before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search.

Here, the issuing authority was presented with more than mere assertions from the police that they had been told by someone that the Defendants were growing marijuana. The search warrant application revealed that the troopers did a trash pull and that "This officer recovered a marijuana stem, an empty box of Herbal Clean and indicia of occupancy for Norman Baroney (sic) and Marianne Baroney (sic). This officer was able to field test part of the marijuana stem using the NIK identification system and same tested positive for marijuana. This officer also notes that the end of the stem was longer than stems found in processed marijuana and was clearly cut at one end. This is of importance as marijuana that is purchased on the street is generally ground and pressed. This tends to create shorter stems and uneven edges at the end

7

of the stems. The stem in this case is more likely from "home grown" marijuana. This officer also knows through training and experience that the Herbal Clean is often used by marijuana users to clear their systems of THC (Tetra-hydrocannabinol) for urine tests. This officer knows through training and experience that marijuana growers/users often maintain a stash of marijuana for their personal use. This officer also knows that this stash is kept in a location under their dominion and control such as their person, residence or securable outbuildings, etc."

The Issuing authority was thus presented with the fact that the troopers had recovered tangible evidence from the Defendants' trash that they were growing marijuana. A reasonable person would conclude that there was probable cause to search the Barony's residence for marijuana plants. Merely because a stem from a marijuana plant is not, standing alone, defined as marihuana under Title 35 does not mean that it is not indicia that marijuana is being grown. Further, just because Herbal Clean is not contraband does not mean that it is not indicia of marijuana use. The Trooper did not state that Herbal Clean was contraband, just that it was used by marijuana users to cleanse their system of THC. To argue that the search warrant was based on untruthful or false information as asserted here borders on frivolity.

Motion to Suppress-Staleness

The Defendants argue that the evidence of criminal activity was stale such that probable cause did not exist at the time the warrant was

8

issued. The trash pull was August 4, 2011. The search warrant was issued August 5, 2011. There is nothing about the facts to indicate that the criminal activity was attenuated by the passage of time.

<u>Motion to Suppress-Insufficient Probable Cause</u>

The Defendants argue that there was insufficient probable cause for the issuance of the August 5, 2011 search warrant. The Court disagrees based on its analysis above.

<u>Motion to Suppress- Fruits of the Poisonous Tree</u>

The Defendants argue that all evidence seized and any statement given by them should be suppressed because the trash pull was illegal and the search warrant was based on insufficient probable cause. The Court disagrees based on its analysis above and in its August 13, 2013 Opinion and Order.

<u>Discovery</u>

The Defendants made various motions for discovery in their Omnibus Pretrial Motion. These have been resolved through exchange of discovery.

<u>Habeas Corpus-Marianne Barony</u>

Both Defendants were originally represented by the same counsel, who filed the original Omnibus Pretrial Motion. After getting separate counsel, Marianne Barony filed a Habeas Corpus. However, she had waived the preliminary hearing with counsel. As such, she is not entitled

9

to later challenge the sufficiency of the evidence, as set out in Pa Rule of Crim. Proc. 541 (A) and (C).

<u>Defendant's Objection to New, Aggravated Crime with Mandatory Minimum Terms</u> and <u>Motion to Declare 42 Pa. C.S.A. 9712 (Sentences for Offenses Committed With Firearms) and 18 Pa. C.S.A. 7508 (Drug Trafficking Sentencing and Penalties) Unconstitutional.</u>

The Court notes that this Court en banc has held that the mandatory minimum sentencing laws that involve fact finding by the Court rather than the jury and a lesser burden of proof than beyond a reasonable doubt have been rendered unconstitutional by the decision in *Alleyne v United States*, 133 S. Ct 2151, 186 L.Ed. 2d 314 (2013). Furthermore, our Superior Court has held recently in *Commonwealth v Newman*, 2014 Pa Super 178, that *Alleyne* does indicate that the sentencing practice under Section 9712.1 is unconstitutional. Therefore, to the extent that the above Motions challenge matters the courts have found to be unconstitutional, they are granted.

Conclusion

Based on the foregoing, the following Order is appropriate this 28th day of August, 2014:

The Defendants' Motions to Suppress found in their Omnibus Pretrial Motion are denied and dismissed. Marianne Barony's Petition for Writ of Habeas Corpus is denied and dismissed. To the extent that the above Motions challenge sentencing schemes the courts have found to be

10

unconstitutional, they are granted. The Court knows of no outstanding

discovery matters. The cases are placed back on the trial list.

BY THE COURT:

_____ J.

I, **YAF**

Hereby certify that on

**AUG 2 8 2014**

1) Original filed w/ Prothonotary
2) Copies sent to:

COUNSEL